Robert and Bernadine Erkins in this proceeding. The issue which I'd like to address first to the court is the issue regarding the 362 state. The Erkins filed a Chapter 11 bankruptcy in Florida. It was May 21st of this year. Well, we just received notice of it last week, and I understand there's a letter that is in the courts to deliver a copy of the bankruptcy petition to the clerk of our court. But this letter, neither this letter nor the copy of the petition was ever received or docketed in our court. Certainly after it was filed, Mr. Sinclair, who represents the Bianco in this proceeding, on May 27th wrote a letter to the court, which I received a copy of, and then on his associate, Curt McKenzie, on June 20th, 2003, wrote a letter to the court, and in one of those letters it's referenced that there was a deorder of what's under Chapter 11 was provided to the court. I received copies of it, so I assume the court received it, I think. It was emergency motion. It was just filed this week, notifying us of the automatic stay. Yes, Your Honor. I – the automatic stay is in effect, and I – and – How do we know that? I haven't seen anything that would show me that the automatic stay is in effect. I haven't seen a petition. I haven't seen a notice of the court. Nothing. Nothing's been filed. Your Honor, I believe that the court can take judicial notice of the proceeding. Do you have a copy of the petition with you today? Pardon? Do you have a copy of the petition with you today? I would have a copy. Do you have a copy of the petition, the bankruptcy petition that was filed in the Middle District of Florida in May with you right now? No, I do not. I do have a copy of the claim that Bianco filed in that proceeding, which I could provide the court. How do we know that it was even filed? We have nothing that we can take cognizance of in front of us. Well, Your Honor, I believe that one of the letters that was – that I think Mr. St. Clair sent – We cannot take judicial notice of a letter. We have – if we're going to take judicial notice of anything, it has to be a properly filed judicial document. You didn't think when you came out here to bring a copy of the petition? Pardon? Never mind. No, I did not bring a copy of the petition with me today. I did not – I don't believe that the issue that – of the filing of bankruptcy is in dispute between any of the parties here. But it's not of record with our court is the problem. I'm not – I don't know if it's your fault or the other side's fault or no one's fault, but our court doesn't show in its docket system that any letters ever received with a copy, even with notice of this bankruptcy, let alone a copy of the petition or a notice from the court. We don't have anything like that. The first thing we have is your motion for a stay on the eve of the argument, you know, after business hours on a Friday before the week of argument. It seems to me that if you've known of this bankruptcy since June, you should have filed your motion sooner, and there's no reason to have an emergency motion, and you should have been able to provide us with some documentation. There is some sense among us that we – which we will be discussing as to whether or not we should issue an order to show cause against you as to why sanctions should not be imposed for this conduct. Your Honor, the stay is a matter of record, which the court can take judicial notice of in the District of Florida. I'm sorry that the Court doesn't have a copy. No. Look at the rules of judicial notice. Under the rules of judicial notice, we can't take judicial notice of anything of which we are not provided a copy. Under 362, when a bankruptcy is filed, there is a stay. We know that. There is no obligation for any affirmative conduct to notify anyone of the stay. If you wish us to recognize that there's been a bankruptcy filing made, you need to provide us with evidence that it has been made. Why should we take your word on the eve of the oral argument when you, by your own statement, say that the bankruptcy petition was filed last June? What do we have in front of us? It was filed in May, but I'm sorry. It was November. How many months is that? All right. Thank you. Let's hear from the opposition to the emergency motion for stay. Could we clarify just one point with counsel here first, if I may? Is it your client's position that if we recognize a stay on case 0235218, despite the lack of evidence in our court file, does that have any bearing on 0235219 or 0235261? In other words, those other cases are also set for argument today. And as I understood your motion, it addressed only the case of 35218 and the Erkin's interest in the real property. Your Honor, that has no bearing on the other appeals. The appeal that is the 18 appeal relates to the original case, which is Bianco v. Erkin's, and the other two relates to the intervener's actions have nothing to do with it. The other two wouldn't have any issue of stay. That would be correct, Your Honor. Okay. That's all I wanted to know. In the bankruptcy petition, in this bankruptcy petition that you told us that you filed in Florida, that the Erkins filed in Florida, did they list any of the personal property as part of their bankruptcy estate? They list all of their personal property. Not the paintings, then, I gather. Pardon? They didn't list the paintings. No, no. They don't claim ownership in the paintings that are the subject of these proceedings. All right. Let's go to the counsel for Bianco. May it please the Court, Joseph Reinhart, the McKay Group, Boston. Excuse me. Your Honor, I have taken the position, representing Alfred J. Bianco, George Panagiotou, and Panatek, Inc., I have taken the position, Your Honor, that regardless of whether the stay has been properly noticed, it has been waived. No, we can't waive that. Do you have a case that supports that? Excuse me, Your Honor? Do you have a case that supports the notion of waivers and automatic stay? Let me ask you this. Do you have a copy of the petition? I do not, Your Honor. Nobody has a copy of the petition. Well, how do we know if it's even filed? Do we have no docket sheet from Florida? I mean, do we recognize an automatic stay? I don't want to be put in a position of arguing against my own situation, but I do know that the case was filed in Florida because I appeared in that court in Florida and argued to change venue. So I do know the case was filed. Do you have any of the claims or anything that shows what the case number is in Florida? I don't believe I have with me anything on that side of the file, Your Honor. Now, going back to your Honor's question. Can you tell us whether the statement that none of the assets that have been or liabilities that have been listed by the Erkins in this bankruptcy petition are related in any way to the other three appeals in this controversy? In our view, Your Honor, if in fact this Court were to recognize the stay, it would not affect the argument in the other two appeals that are part of this consolidated trio. Okay. 0, 2, 3, 5, 2, 1, 9. That's 2, 1, 9, Your Honor, and 2, 6, 1. 6, 9. Yes. It would not affect those. Could you address another point? I thought Mr. Magnuson said that perhaps somebody representing Bianco had sent a letter to the Ninth Circuit about this bankruptcy. Oh, thank you, Your Honor. Oh. Yes, Your Honor. Oh, you. Mr. We have no record of that letter either. I did send it, Your Honor. I apologize. I sent it to try to get the attorneys for the Erkins to file the appropriate notice of the court. They have not done so. I did not follow it. Sent it to the clerk's office? Is that where you sent it? Yes. Well, no one, it doesn't show in our docketing system. None of these letters. And none of us, we don't have a copy of it. Mr. Sinclair, Your Honor, and I basically transitioned the representation at about the time that Mr. Sinclair's office filed the letter. Now, to go back to Your Honor's question about the stay itself and the waiver issue. The stay is automatic. Pardon, Your Honor?  I understand that, Your Honor. But I would argue that under the Conego Enterprises case, 9-6-3-346, the question of cause for relief from stay is defined. But isn't that something you have to address to the federal court in Florida? The bankruptcy court. The bankruptcy court. Say, give us relief from the stay. This is a bogus filing or whatever you'd want to say. But I don't see how we can act on that. Your Honor, in fact, in this rather large set of appellate proceedings, the Court has been acting with regard to the stay. There is a second trio of appeals, which is presently in the briefing stages, numbers 02-35909, 910, and 932. In that trio of appeals, the docket, and I have a copy of the docket if the Court would like it. The docket clearly shows that shortly after the Erkins filed bankruptcy in Florida, they asserted the stay here in the Ninth Circuit. And the Ninth Circuit granted a stay for a period of 60 days. It stayed all proceedings for 60 days. That stay expired in August. In August. The Ninth Circuit in these other case numbers? In the other case numbers, Your Honor. I'm prepared. Those cases weren't consolidated with the ones that we're here on today. They were not. I think this panel has no knowledge of those cases until you guys file this or until they file their motion here. I understand that, Your Honor. But the point that I'm making is that I believe that there is more than one way to deal with an automatic stay issue other than simply going back to the Bankruptcy Court in Florida and saying, please give me relief from stay. Is that a court order in those other cases, or is it other? Pardon, Your Honor? In those other cases where you say the Court took some action with regard to the stay, was it an order of the clerk or was it an order of a panel or? It appears to be a clerk's order. I'll read it to the Court. The entry is June 16th, 2003. It says, filed motion of appellants and deputy clerk order. Appellant's motion to stay the proceedings is granted. The proceedings are stayed pursuant to 11 U.S.C. 362A. The Court grants appellants a 60-day stay. Within 60 days from the date of disorder, the appellants shall file a status report. That's not in this case. I understand that, Your Honor. And again, the point that I'm trying to make is that as I'm responding to Your Honor's question, I believe there's more than one way to deal with this. All that order is doing is just trying to monitor the status of the bankruptcy proceedings. We don't want these appeals filed and just linger with nothing happening on them. So we ask for status reports. What's happening with the bankruptcy proceeding? What's going on? If you're not ñ well, we can also encourage parties to go to the bankruptcy court and ask for the stay to be lifted, ask for relief from the automatic stay, and so we can move these cases through the system. That order that you just read, all that is saying is the case is stayed. It gives us a status report in 60 days. It's not acting ñ look, I think we should take a recess. Yeah, we're going ñ okay, counsel, I just wanted to tell you, because of the significant amount of time we've spent on this, and in all likelihood because we're not going to be proceeding on Bianco, we will be reducing your time. Each side for each case should expect 10 minutes per side. Thank you. And we will take a brief recess. Thank you, Your Honor. All rise. This court now stands in recess. This court now is in recess. You may be seated. Given that both sides recognize that the bankruptcy petition has been filed on behalf of the Irkins in Florida, we will stay ñ we will recognize the automatic stay of proceedings, and we will not proceed on appeal number 0235218 today. We will, however, require a joint status report within 60 days of today from both sides attaching copies of the bankruptcy petition and any orders of the bankruptcy court, notifying us of the status of proceedings there. Finally, we issue, in order to show cause against Counsel for the Irkins, Mr. Magnuson, and the Irkins, why sanctions should not be imposed for failing to promptly notify our court of the bankruptcy filing. And as I said previously, each side for each of the remaining appeals, the consolidated 1-9 and 6-1, and then separately 2-9, will each have 10 minutes per side, and you may now proceed. Please report. I'm William Mock. I represent distinct parties in this case. I make the point not only because of what transpired immediately prior to my coming to the podium, but also because I think what occurred before the district court, there was an often blending of the interests of my clients, ignoring them largely because they were of the same name as the defendants in the case. I represent the owners of hundreds of thousands of dollars of artwork that were seized at their parents' place pursuant to a writ of execution against the property of the debtor. They are not judgment debtors. They are third parties who against there is for whom there is no judgment. The court effectively forfeited the ownership interests of my client without any notice of the procedures for protecting their interests because it determined that my clients had failed to give notice, ministerial notice, to a marshal within 14 days of their claim. In so doing, they took a statute, which I believe is designed principally to avoid the premature sale of property erroneously seized and an expedited hearing to determine exemption issues and ownership issues, and they transposed it into a 14-day statute of limitations. As a result, they misinterpreted and misapplied Idaho law, and the district court in the process denied my clients due process. There are those two issues before us. And let me take up what I think is the course of least resistance and the simplest issue in the case, which is the misapplication and misinterpretation of Idaho law. The statute that the district court relied upon, Idaho Code Section 11-203, provides in its text provision whereby if property is seized and notice is provided pursuant to the statute, which includes a copy of the writ, a copy of forms that are to be used for filing claims of exemption and third-party claims, and other papers are delivered to the defendant and to third parties seeking an interest, they must then within 14 days give the marshal notice of the claim. If that occurs, it triggers then the marshal having to give notice to the plaintiff, the judgment creditor, who then must within 14 days request a hearing, which must be held then within 5 to 14 days, an expedited process. Unless notice is given to the marshal, the marshal then, according to the instructions, may proceed to sell the property at a public sale or, if appropriate, deliver it to the judgment creditor in the case. What is the status of the paintings now? Have they been sold? The paintings have been sold. The paintings have been sold. Let me ask you this. As it turns out, the notice wasn't given. That's correct. Okay. Or at least the marshal didn't give the formal notice of claim of exemption, okay? But nonetheless, they came in. They joined in the motion to quash the writ of execution, if I'm not mistaken. Correct. And that's what prompted all the district court's proceedings. Why wasn't that tantamount to the claim of exemption? I think it was. I think effectively it was. I think what the district court ended up doing was saying, on the motion, obviously, of judgment creditor, that you had to come in within 14 days. District court picked up on that and said, well, you didn't come in within 14 days, therefore you're barred. This is what you're doing. All that really means, then, is that you can't assert the third-party claim. Does it mean you file, you turn around and file a claim for conversion, which is under Idaho law is not precluded here. And that action is the case that you're going to hear behind me, because ultimately that court action was then thrown out because they determined that the decision of the – in my case, the decision that you fail – my clients failed to give notice within 14 days, barred, then, was race judicata, barred any subsequent action for conversion with Levin or any other action that might be taken. So effectively, I think I'm not over – I'm not exaggerating when I think what the court did is it interpreted the 14-day limitation as simply a statute of limitations. But I don't think that precluded the court from hearing our objection in the context of the proceedings that was in front of us. Let me ask you a question. Is there a Idaho case, an Idaho case, that says that the 14 days is tantamount to a statute of limitations? Absolutely not. Absolutely not. And even the statute itself does not say that. I want to call the Court's attention in particular. I have the statute right here. All right. The statute I want to turn the Court's attention to is not 11-203, because 11-203 we talked about. 11-203 talks about the notice that would have been given and had to have been given as a predicate to the 14 days running under Section 8-507, 8-507A and 8-507C. And 8-507C are the forms that would have been delivered. I quoted them in part in my brief, but I should have quoted another section, which I think is absolutely critical in terms of the notice that would have been given and is pivotal on this point, because the notice, had it been given, would have said that if you fail to make a timely claim of exemption, the sheriff will release money to the plaintiff, or the property may be sold at an execution sale, perhaps at a price substantially below its value, and you may have to bring further court action to recover the money in the property. Okay. Well, look, we're going to come to whether they could bring a different action in the other case, in the case against the creditors, where that issue is, you know, squarely raised when you brought your claims for conversion and abusive process and the claimant delivery. But in this case, just as to whether they forfeited a right under this Idaho procedural statute in this action, how do you deal with finding a fact number 34, which is on page 15 of the district court's order? The opening clause of which says, although the Irving's children were aware that specific items of personal property had been seized from their parents' residence on June 22, then it goes on to say they didn't submit a claim of exemption. So it seems to be, putting aside the legal issue of what that statute required, it seems to be a finding of fact that the children were aware of the seizure on June 22. So do you contend that's clearly erroneous? I do contend it's clearly erroneous. Isn't that the standard for us on a factual issue? Absolutely. And then the judge also makes it clear. I do want to be clear, Justice Gould, that there was one family member claiming ownership in the paintings who was present. I can't say that person didn't know of the seizure. I understand. But none of the other adult children distributing and living all throughout the United States had any personal knowledge of the seizure occurring. You would say the opening part of that finding is clearly erroneous. I would. Then the judge later says, and I don't remember which number it is, but I guess it's in conclusion number 11. It makes a legal conclusion down at the bottom of the page 19. Page 19, yeah. And going to the top of the next page, it says, while the Perkins children may not have been formally or personally served with notice, they were given constructive notice based on the presence and participation of, and it mentions a couple of, I guess two of the children. Correct. So now that's a legal conclusion, I guess, under Idaho law. There is no Idaho law that supports that conclusion. I'm just saying what I understand the judge to be doing is making a legal conclusion that he views Idaho law to create constructive notice. So I want your view whether there's law pro or con on this. There's no Idaho law. There are only two cases. They're both cited in the opinion. Neither of those cases even address this issue. But it obviously raises the due process implications here. Constructive notice is a fiction. It's a fiction that the law creates to substitute under other circumstances where it's practical and it seems to make sense. But it's not practical and it doesn't make sense here when you fundamentally abuse due process. There was knowledge of the existence of third-party claims. There was at least the possibility that this property was not owned by others. There was knowledge, we believe, and the record reflects, that the real parties in interest in this case knew that the children had an ownership interest, not disclosed to the marshal. That's totally ignored in this case. The marshal wasn't told or given instructions to serve third parties because the third parties weren't disclosed. As a consequence, the constructive notice to the parents, I mean, it just, it offends due process. It suggests that the statute itself, the bulk of the statute itself, is irrelevant. Why build a statute that puts in all these procedures for service of papers and notice upon a third party if, by simply serving the debtor, you have constructive notice on third-party owners? You don't even need to go through that process. And I don't have time to go into all of the fundamental principles of due process, but it certainly offends fundamental principles of due process. I understand Idaho law. The marshal just follows the directions of the creditor. That's correct. And so if a creditor lies or hides information. That's a whole other issue. But the marshal just is required to follow what's in the instructions regarding service of the writ of execution. Yeah. And I don't know whether that, I agree with that. I know what the opponents seem to say out of that and what the courts seem to say was, so therefore, the writ's valid. Therefore, the marshal's process was valid. Therefore, there's no denial of due process. There's all kinds of cases that say just because you follow the prerequisites of the statute doesn't mean that due process hasn't been offended. All right. Thank you, counsel. Thank you very much. And Mr. Reinhart, is that correct? Mr. Reinhart, you'll handle your argument as you think is most appropriate. But at some point in your argument, I would hope you could please address the two points I asked your colleague. One, if there's any factual evidence in the record supporting the first half, the first clause in that finding 34 about the children being aware of the seizure. And second, whether there's any legal authority in Idaho law that supports the district judge's conclusion of law about constructive notes. I believe, Your Honor, responding to your first question with regard to the factual evidence, I can't point to the precise point in the record because I don't have the record with me. But the district court found that the children did not notify the marshal of their claim at the time of seizure. What took place was Randy Erkins, who was one of the children, said, don't forget about the trust. There's a trust here. This stuff belongs to a trust. But no one ever said during that entire proceeding, Mr. Marshall, we own these properties. We own these paintings. In fact, subsequently, one of the Erkins children said, well, we can validate our claim of ownership by virtue of the fact that our names are written on the back of the paintings which we own. And then the paralegal for the Stowell Ridge law firm actually went and unwrapped all of those paintings and found no names on the back of the paintings. But would it have been sufficient to give notice within the 14-day time period if one of the – I thought there were two or three children who were there – had just said to the marshals, wait a minute, this belongs to us, it doesn't belong to our parents? I believe the problem was, Your Honor, that when the Stowell Ridge law firm and the marshals went out there, they had no idea that there were any adverse ownership claims to any of this property. They were going out to seize property in accordance with the judgment that had been properly domesticated in the U.S. District Court.  Wait on that first one, though. I know that there's a group of children, right? I forget the number. Eight, nine, you tell me how many. Excuse me, Your Honor. How many children are there? There are ten. Ten children, and two or three of them are there. But on the factual point, is there any fact, evidence that the children who weren't at the residence, you know, someone who lives in New York or Miami or Los Angeles or whatever, that they were aware of the June 22 seizure? Oops, excuse me. Mr. Sinclair provides me, Your Honor, with an affidavit from Gregory Todd Erkins, which is in the record below. And he points out in his affidavit, specifically paragraph 3, My mother and my father, excuse me. On June 22, 2000, my mother and father informed me that law enforcement personnel seized property at their home in Gooding County, Idaho. It is my understanding the seizure was carried out by the U.S. Marshal's Office in accordance with, and it goes on to list the case number and so on. And then he goes on to say, The property seized by the United States Marshal's Office included personal property owned by me. So we now have one of the Erkins children who was not at the seizure that day. What's the date of that? The date of this affidavit, Your Honor. They say the date that they learned. Excuse me, Your Honor. The date on which they learned of that information. He does not say, oh, excuse me, he says on June 22, 2000. That was the day that the seizure took place. So I think it's a reasonable inference to be drawn from this that the senior Erkins called at least Gregory Todd Erkins. I assume that two or three of them got calls and three of them were there. But what about the other three or four? Did they just rest on constructive notice? Excuse me, Your Honor. Again, getting help from Mr. Sinclair. Looking at the record excerpt, there are affidavits from each of the ten Erkins children which parallel what has been said in the Gregory Todd Erkins affidavit. And these are found in all of the Erkins excerpts of the record, specifically ER1, ER2 through 4, ER5 through 12, basically ER1 through 49. And it deals with each one of the ten children. So they did, in fact, have notice. If it's ambiguous, though, as to whether they're saying I later learned that it was seized on June 22 or whether they're saying I knew about it on June 22, then we get to constructive notice. So you were about to argue on that when I interrupted you. What's your legal authority on constructive notice? The position I take, Your Honor, is I reluctantly have to agree with opposing counsel. There is no Idaho law that I could find. But we have cited in our brief. Why don't you just argue that they had actual notice within the 14 days? Pardon, Your Honor? Why don't you just argue that they had actual notice within the 14 days and they should have filed a third-party claim? I believe we have argued that, Your Honor. But I've been asked the question about constructive notice as well. And there is no Idaho law. At least I couldn't find it. But there is a case that we cite in our brief called Park Hill Restaurants, which is an Oklahoma Supreme Court case. And in the Park Hill Restaurants case, the rule is that there's no notice required to a third-party or, excuse me, when no notice is given to a third-party claim, due process is not offended as long as there's actual notice to those who are in possession of the property. And here the record is clear and undisputed that the senior workers were obviously in possession of the property because it was categorized, inventoried, and taken from their home on the 22nd of June. I know there's a case with the Baylor and which one is the Bailey. It's been a few years since I studied property law. But is that saying like if someone's holding property for another person, you assume that they would give notice to the owner if it's granted? Yes, Your Honor. And that case in Oklahoma kind of supports that. That is from the Oklahoma Supreme Court. It is cited in our brief. Let me ask you this. The children joined in the motion to quash. Is that correct? Yes, Your Honor. Why isn't that tantamount to a third-party claim? It would seem to me that it becomes a third-party claim. And when the judge dealt with the motion to quash, he dealt with that claim. Well, the motion to – was the motion to quash filed timely, within 14 days? No, it was not, Your Honor. The motion to quash was filed in late July. Was the motion to quash, though, within the statutory period? I don't believe so, Your Honor. Are you sure about that? Pardon me, Your Honor? Are you sure about that? I am not sure about that, Your Honor. I have to be very candid with you. I mean, again, I believe it is. Well, let me ask you this. If you assume that it was filed timely, the motion to quash by the Erkins, the senior Erkins, and the children filed their joinder claiming they had an ownership interest in the property, and if you say why isn't that essentially tantamount to what's required by the statute, and the judge says, well, it's untimely, and therefore it's denied, that sounds incorrect to me. What's wrong with that? I — if you argue that the joinder in the motion to quash was in fact a third-party claim or was in fact some type of notice, some type of notice under the statute, then you've backed me into a corner, Your Honor, quite frankly, because if indeed that's correct and if it was timely filed, then we come to the question about whether or not it substantially complies with the language of the statute. And that would be an issue, I believe, that the district court judge would have considered. But in this case, I don't think there was a timely, if we talk about the 14-day deadline required for third-party claims under the statute, I think it's undisputed that there was no filing within that 14-day period. By anybody. By anybody. I thought that they tried to close down the proceedings after the 14 days, maybe before the things were sold or something like that. Someone got notice. The parents in the notice got notice that they had to do something within the 14 days, right? Pardon me, Your Honor? In the notice that you have to do something within the 14 days. Well, on that issue, Your Honor, I would look to the Perkins case that's cited in our brief. And the Perkins case stands for the proposition that once a property earner is informed of a seizure, he can turn to public sources to learn of remedial procedures. So, therefore, under Perkins, once the Erkins children became aware that there was a seizure of the artwork, then the burden fell on them to consult public sources, to consult a lawyer, to do something to determine how or what rights they had and how to effect their seizure. So they joined in the motion to quash. But again, Your Honor, if the motion to quash. And that precipitated a very lengthy hearing and findings and brings you here today. But if the motion to quash is not filed within the 14-day period. Well, I don't know, but I asked you. That's how we can argue that it fulfilled the statutory requirement. That's why I'm. I'm not certain that it is or isn't. I don't recall. I'd have to check. The assumption is that it wasn't started within the 14 days. But we'll check the record on that again. But we know that the marshals gave a notice to Robert Erkins that includes the verbiage from the statute that you've got to do something. You've got to claim exemption within 14 days. But we don't know that anybody ever gave that particular notice to the children. So it seems to me that the district judge said the children were aware about the seizure. And then he said they had constructive notice of all this. Which is, as I think your colleague on the other side probably correctly noted, is normally a remedy. Constructive notice. So it's really a question of what Idaho law permits. I think, however, your Honor, that the finding by the judge that there was notice, I believe, is a finding of fact. And that finding of fact is based upon the affidavits that were indeed filed by the So, therefore, in order to overturn that finding of fact, somehow we have to find that it's clearly erroneous. And I would submit that we can't do that. Do you say the finding of fact that they had actual notice of the June 22 seizure isn't clearly erroneous in light of their affidavits? Yes, your Honor. And what I'm saying is that under the Mata Ballesteros case, the standard for finding that a finding of fact is not clearly erroneous is only that the finding of fact be plausible. And I think that the finding that the judge made, given the affidavits that were submitted, because if we look at those affidavits, they are affidavits that are being submitted by those parties, and, therefore, they are admissions by those parties. I would say they are binding admissions, and, therefore, it's plausible. Let me ask you another question. Judge Wardle asked a question about the status of the paintings. They were sold. Why isn't this all moot? The paintings have been sold. Why isn't this post-judgment proceeding over the dispute of the properties, why isn't it just moot because the property has been sold? There's no way they can get the property back. They're going to have to resort to their other remedies that are apparently available under Idaho law, conversion. Your Honor, I couldn't agree with the Court more. In fact, it's our position that not only are these disputes over the paintings moot because the paintings have been sold, but there are other appeals that are percolating throughout the Ninth Circuit with regard to the real estate. That's been sold. And it wasn't time to renew it. So why hasn't – so cancel, lest you go over much longer. Why haven't you filed a motion to dismiss on the grounds that it's moot? Quite frankly, Your Honor, because I came into this appeal on October the 7th, and when I came into the appeal, my appearance basically crossed with the notice of oral argument. All right. Well, we would be more than willing to entertain a motion that we should dismiss on the grounds that this is – All moot. Well, proceeding is moot, and I'm going to ask that you file such a motion on or before 10 days from today with a response from the opposing counsel 10 days after that, and you can figure out the calendar days as well as I can, and then we will consider that issue and we will defer submission of this case pending consideration of whether or not it should simply be dismissed as moot, because, of course, that's a jurisdictional question. If we don't have jurisdiction, we can't do anything else. Thank you, counsel. Thank you, Your Honor. We're going to defer submission on Bianco v. Erkins. And we will take up Erkins v. Bianco. Erkins v. Stone. Oh, sorry. Erkins v. Stone. Erkins v. Stone.
judges: Wardlaw, Gould, Paez